528 A.2d 986

**Jessie L. FARAGO and Sandor L. Farago, Appellants,**

v.

**SACRED HEART GENERAL HOSPITAL**

Superior Court of Pennsylvania.

Argued May 7, 1987.

Filed July 23, 1987.

2

Peter C. Gardner, Philadelphia, for appellants.

Allan H. Starr, Philadelphia, for appellee.

Before BROSKY, WIEAND and BECK, JJ.

BROSKY, Judge:

This is an appeal from the Judgment entered by the trial court denying appellant's post-verdict motions.

Appellants present four (4) issues for our review: (1) whether the trial court erred in ruling that the hospital was liable only for acts of gross negligence; (2) whether the trial court erred in permitting appellee to present evidence regarding the criminal investigation of the alleged rapist and the lack of any prosecution; (3) whether the trial court erred in excluding from evidence the medical records of the alleged rapist together with the incident report prepared following the sexual assault upon Mrs. Farago; and (4) whether the trial court erred in instructing the jury on the issue of "willful negligence" and charging the jury that this, plus evidence of gross negligence, must be found to impose liability upon the hospital.

Upon consideration of the trial court opinion and briefs of counsel, we affirm the decision of the trial court.

The trial court, in its opinion, gave a thorough analysis and discussion of the issues on appeal. Thus, while we will rely upon that court's resolution of appellants' last three issues, we feel that, because of the scarcity of appellate cases on the matter, the issue of appellee's immunity warrants further attention.

Mrs. Farago was voluntarily admitted to the Psychiatric Unit of Sacred Heart General Hospital on October 14, 1982. Mrs. Farago was suffering from chronic schizophrenia at the time of her admission. After evaluation, it was determined that Mrs. Farago did not require any special form of

observation. Routine orders, including hourly checks, were prescribed.

Sometime later, Mrs. Farago entered the Quiet Room, the doors to which always remained unlocked. A male patient was also present in the Quiet Room at that time, and a sexual encounter took place between Mrs. Farago and the male patient. A member of appellee's staff discovered the two patients in the bathroom of the Quiet Room. An incident report was filed; however, no mention was made of sexual intercourse having occurred, as Mrs. Farago never indicated that she had been assaulted by the male patient. It was three days later that Mrs. Farago claimed that she had had sexual intercourse with another patient, and it was not until November 1, 1982 (approximately 18 days after the alleged incident) that Mrs. Farago told her husband about the matter. Mrs. Farago claims that she was raped; however, this has never been established.

Appellants argue that the trial court, in deciding that appellee was entitled to immunity absent willful misconduct or gross negligence, misconstrued and misapplied the Mental Health Procedures Act, 50 P.S. § 7101, et seq. The statutory language in question is as follows:

§ 7114. Immunity from civil and criminal liability

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

\* \* \* \* \* \*

Appellants contend that, because those specified in the statute as having immunity are individuals, appellee hospi-

tal was not meant to be included. With this contention, we disagree.

According to 1 Pa.C.S.A. § 1921(b), "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." But, because this is a case of first impression before our Court,[1] we feel that we must closely scrutinize the statute in question to arrive at its proper interpretation.

The Mental Health Procedures Act (MHPA) fails to provide us with a separate definitional section for that Act alone. Thus, we need not encounter the problem of specific statutory provisions controlling general ones. See 1 Pa.C. S.A. § 1933. In the absence of a contrary, controlling specific provision, we must construe the Act so that both provisions are allowed to operate. See *Appeal of Yerger*, 460 Pa. 537, 333 A.2d 902 (1975). Therefore, we may look to the general rules of statutory construction for guidance in this matter.

■ The statutory Construction Act of 1972 provides that the word "person" as used in any statute enacted on. or after September 1, 1937, shall include a corporation, partnership, and association, as well as a natural person, unless the context clearly indicates otherwise. 1 Pa.C.S.A. § 1991. The complaint filed in this case clearly states that "Defendant SACRED HEART GENERAL HOSPITAL is a Pennsylvania corporation ..." thereby placing appellee within the scope of 50 P.S. § 7114 which specifies "... or any other authorized person ...".

Additionally, since the MHPA does not clearly set forth how its terms are to be interpreted, we turn to 1 Pa.C.S.A. § 1921(c) which states:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

---

**1.** This question of a hospital's immunity was placed before our Court in *Simmons v. St. Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984). However, the Court found the issue to have been raised prematurely, and therefore, left the question unresolved.

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

See also, *Lehigh Valley Co-op Farmers v. Com. Bureau of Employment Sec. Dept. of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982) (in ascertaining legislative intent for purposes of construing a statute, the practical results of a particular interpretation may be considered); *Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982) (General Assembly does not intend a result that is absurd or unreasonable); *Busy Beaver Bldg. Centers, Inc. v. Tueche,* 295 Pa.Super. 504, 442 A.2d 252 (1981) (language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object).

As pointed out by the trial court, the Mental Health Procedures Act includes all treatment, full or part time, in a "facility", which means "... any mental health establishment, hospital, clinic, institution ..." 50 P.S. § 7103. That treatment must be administered by individuals who are granted the immunity mentioned in 50 P.S. § 7114. It would be inconsistent, and indeed self-defeating, for the statute to allow immunity on the one hand, but to deny it on the other. The hospital does not act independently of its employees, and therefore, should not be subjected to a different standard of care and liability than those employees.

Additionally, as a collateral matter to this issue of immunity, appellants argue that the lack of restraint upon Mrs. Farago was not a treatment decision which could be accorded immunity. We disagree.

■ Section 7107 of the MHPA defines "individualized treatment plan" as:

... a plan of treatment formulated for a particular person in a program appropriate to his specific needs. To the extent possible, the plan shall be made with the cooperation, understanding and consent of the person in treatment and shall impose the least restrictive alternative consistent with affording the person adequate treatment for his condition.

Thus, it would appear that "treatment" is meant to encompass more than the initial decision to treat and examine, as appellants would have us believe. Accordingly, the decision to treat Mrs. Farago in an open ward with few restraints was a treatment decision falling within Section 7114 of the MHPA thereby entitling appellee to immunity from ordinary negligence.

Therefore, for the reasons given above, we find that the trial court was not in error in deciding that, absent willful misconduct or gross negligence, appellee was entitled to the immunity afforded by 50 P.S. § 7114.

Judgment affirmed.