586 A.2d 475

**Linda Marie ALEXANDER and Francis and Mary Alexander, parents and guardians of Linda Marie Alexander, and Francis and Mary Alexander, individually, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE and Altoona Center a/k/a Altoona Center School and Hospital, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1990.

Decided Jan. 24, 1991.

Petition for Allowance of Appeal Denied June 20, 1991.

Harry Lore, with him, Marvin I. Barish, Philadelphia, for appellants.

J. Elise Tourek, Deputy Atty. Gen., with her, Mark E. Garber, Chief of Tort Litigation Unit, and Ernest D. Preate, Jr., Atty. Gen., Pittsburgh, for appellees.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

CRAIG, President Judge.

Linda Alexander (patient) and her parents, Francis and Mary Alexander, appeal an order by Judge Kopriva of the Court of Common Pleas of Blair County granting a motion for judgment on the pleadings in favor of the Department of Public Welfare (DPW) and the Altoona Center School and Hospital (ACSH) (collectively referred to as the Commonwealth) and dismissing the Alexanders' motion for summary judgment.

On the evening of April 20, 1985, an unknown criminal abducted the patient from her room on the fourth floor of the ACSH, a DPW-operated state residential facility housing profoundly retarded and disabled persons. The patient was found the following morning in suburban Altoona; she had been raped in the course of her kidnapping.

In April, 1987, the Alexanders filed a civil action complaint against the Commonwealth.[1] The Commonwealth filed preliminary objections to the complaint in the nature of a demurrer, which the Common Pleas Court of Blair County overruled. The Commonwealth then filed an Answer and New Matter raising sovereign immunity as an affirmative defense.

After discovery, the Commonwealth filed a motion for judgment on the pleadings and the Alexanders filed a motion for summary judgment. On March 22, 1990, the

---

1. The initial complaint included the Secretary of DPW and the Director of the ACSH as defendants, but the active parties in this case agreed by stipulation to dismiss the two individuals from the case.

trial judge entered judgment for the Commonwealth and dismissed the case. The Alexanders filed a motion for reconsideration based upon an alleged violation of federal constitutional rights, but the trial judge denied the motion after the Alexanders' counsel conceded that federal precedent held otherwise.

The Alexanders now contend that the negligence of the Commonwealth's health care employees in failing to protect the patient falls within the medical-professional liability exception to the sovereign immunity statute. Additionally, the Alexanders assert that the inadequacy of security in the ACSH represents a dangerous condition of real estate, which also removes the shield of immunity.

■■ A motion for judgment on the pleadings, Pa.R.C.P. No. 1034, summarily disposes of a case before trial where there exists no genuine issue of fact and which entitles the moving party to judgment as a matter of law. *Giddings v. Tartler*, 130 Pa.Commonwealth Ct. 175, 567 A.2d 766 (1989). Furthermore, such a motion is limited exclusively to the pleadings themselves. *Id.*

Therefore, the issue in this case is whether the pleadings contain a genuine issue of fact, which would have an effect on the applicability of an exception to sovereign immunity.

Section 8522(a) of the Judicial Code, 42 Pa.C.S. § 8522(a), waives sovereign immunity as to Commonwealth parties "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity," but only in the instance stated in section 8522(b).

Section 8522(b), 42 Pa.C.S. § 8522(b), provides:

(b) **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(2) **Medical-professional liability.**—Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

. . . .

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons. . . .

### 1.   Real Estate Exception

In *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), the Pennsylvania Supreme Court addressed a factual situation where a detainee in the Philadelphia Youth Study Center escaped and committed numerous criminal acts against the Mascaro family. The Mascaros, in their complaint against the City of Philadelphia, argued the applicability of the real estate exception by asserting that the city's negligent maintenance of the Center facilitated the detainee's escape.

The Court noted that the local agency is amenable to suit when the acts of the agency or its employees make the property unsafe for the regular, intended, or foreseeable use of the property, but held that "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury." *Id.,* 514 Pa. at 363, 523 A.2d at 1124. The Court further specified that harm caused by a third party may not be imputed to the local agency or its employees.

This court applied *Mascaro* to a case involving the alleged negligent supervision of a school student who sexually assaulted another student. *Cotter v. School District of Philadelphia,* 128 Pa.Commonwealth Ct. 159, 562 A.2d 1029 (1989). The court held that, because the appellants "alleged

that the damages were the result of actions of another student and not from the defects of the land itself," *id.*, 128 Pa.Commonwealth Ct. at 162, 562 A.2d at 1031, the complaint did not fall under the real estate exception.

Furthermore, a dangerous condition of real estate does not exist where unknown assailants injure state highway travelers by throwing rocks from a highway overpass down onto the highway. *See Mistecka v. Commonwealth*, 46 Pa.Commonwealth Ct. 267, 408 A.2d 159 (1979). Although this court held in *Mistecka* that such a situation did constitute a dangerous condition, the Pennsylvania Supreme Court, in applying *Mascaro*, "disavow[ed] the rationale of Mistecka and its progeny while affirming the similarities of the governmental and sovereign immunity sections that pertain to real property." *Snyder v. Harmon*, 522 Pa. 424, 435 n. 7, 562 A.2d 307, 310 n. 7 (1989).

■ The Alexanders allege that negligent security measures facilitated the criminal act; however, the undisputed fact remains that an intervening factor caused the patient's injuries. Therefore, because the physical characteristics of the ACSH did not *cause* the abduction and rape of the patient, the real estate exception is not applicable in the present case.

### 2. Medical–Professional Liability Exception

■ In the case of *Moore v. Pennsylvania Department of Justice*, 114 Pa.Commonwealth Ct. 56, 538 A.2d 111 (1988), the victim of a shooting, which a furloughed prisoner committed, asserted the applicability of the medical-professional exception to immunity, alleging that the state engaged in willful misconduct by negligently approving the criminal's furlough and by failing to diagnose his psychiatric condition properly. This court, applying the *Mascaro* analysis to the medical-professional liability exception, held that the Commonwealth is immune from liability for harm caused by the criminal acts of a third party.

Moreover, "the General Assembly has not waived the immunity of the 'Commonwealth or its local agencies' for harm caused by third persons 'in *any* of the eight [immunity] exceptions.'" *Moore* at 59–60, 538 A.2d at 113, quoting *Chevalier v. City of Philadelphia*, 516 Pa. 316, 319, 532 A.2d 411, 413 (1987), citing *Mascaro* (emphasis in original).

The Alexanders contend that, because of the patient's mentally retarded condition, there is a "special relationship" between the Commonwealth and the patient, which resulted in the Commonwealth having an "unequivocal duty" to furnish protection. The Alexanders then assert that the "vulnerability of mentally retarded women in institutional environments" gives rise to a jury question of whether the health care employees in charge of the building on the evening of the abduction breached a duty of care owed to the patient, which "proximately caused the harm" to the patient.

However, the medical-professional waiver of immunity does not turn upon the existence or non-existence of a legal duty. The medical-professional waiver is expressly limited to "[a]cts of health care employees." Therefore, because exceptions to the rule of immunity must be narrowly interpreted, *Mascaro*, we cannot expand the reading of the statute to include exceptions where causation stems from the intervening act of a third party.

Thus, because the pleadings contain no genuine issues of fact, the trial court did not err as a matter of law in granting the Commonwealth's motion for judgment on the pleadings.

Accordingly, the decision of the Court of Common Pleas of Blair County is affirmed.

## ORDER

NOW, January 24, 1991, the order of the Court of Common Pleas of Blair County, dated March 22, 1990, at No. 746 of 1987, is affirmed.